[PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 22-14219

_____

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellant,

*versus*

JOHN HOLLAND,
EDMUNDO COTA,
WILLIAM MOORE,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cr-00234-AT-CMS-1

_____

Before WILSON, JILL PRYOR, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal is about an exclusion from the hearsay rule for the statements of a party's coconspirators. The government accused the defendants of participating in an illegal healthcare kickback scheme and sought to introduce at trial out-of-court statements made by the defendants' alleged coconspirators. But because the district court held that the government failed to prove that the defendants had the relevant mental state to make their conduct a crime, the district court refused to admit the statements. The district court erred. One need not show that a conspiracy was unlawful to introduce coconspirator statements. So long as those statements were made during and in furtherance of a joint venture that included an opposing party, the statements are admissible. Because the district court excluded the statements in this case based on an erroneous view of the law, we reverse and remand.

I.

The Anti-Kickback Statute is a federal law prohibiting people from referring or accepting the referral of patients covered by a federal healthcare program in exchange for a payment. 42 U.S.C. § 1320a–7b. This statute was allegedly violated by John Holland, William Moore, and Ed Cota. Cota and his wife Tracey ran a set of clinics for Hispanic women and children, which the parties call Clinica. Holland and Moore, meanwhile, were hospital executives for Tenet Healthcare. Holland and Moore allegedly increased the number of childbirths at Tenet hospitals by paying the Cotas to

refer Medicaid or Medicare-covered pregnant women to the hospitals. The payments, the government says, came in the form of contracts to hire the Cotas to provide translation services for the women that they referred.

Tracey Cota pleaded guilty to violating the AKS by participating in this scheme. The district court accepted that plea, finding "a basis of fact that comprehends each and every element of the offense charged to which she is pleading." But the other defendants maintain that their business relationship did not violate the AKS, in part because they lacked the relevant mental state or *mens rea*.

In prosecuting the three defendants, the government intended to rely on out-of-court statements from several of their unindicted coconspirators. The defendants moved for a pretrial hearing under *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc),[1] which requires a district court to determine the admissibility of coconspirator statements under an exclusion from the hearsay rule. The government consistently objected to how the defendants envisioned the hearing, calling it an improper "attempt to conduct a mini-trial" on the AKS conspiracy charge. The government argued that the court should not allow the defendants "to contest whether a crime occurred" or address the "wholesale exclusion of all co-conspirator statements on the ground that no crime occurred." In its final brief in response to the defendants' arguments,

---

[1] We are bound by decisions of the United States Court of Appeals for the Fifth Circuit issued before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the government asked the district court to decline the defendants' "invitation to hold an impermissible summary judgment proceeding" on whether the defendants committed a crime.

Over the government's objection, the district court decided to hold a pretrial "paper" hearing to test whether the government could prove that the defendants engaged in an AKS conspiracy with their alleged coconspirators. Based on the government's evidentiary presentation, including the guilty plea of one coconspirator, Tracey Cota, the district court recognized that the charged coconspirators worked together toward a common goal: "It is beyond dispute that (1) Holland, Moore, and Cota worked together to create contractual relationships between Clinica and Tenet hospitals, (2) under the terms of the contracts, Tenet paid Clinica, and (3) Clinica referred patients to Tenet hospitals." But the district court held that this showing was not good enough. To admit the offered coconspirator statements, the district court believed that the government had to prove by a preponderance of the evidence that the defendants' conduct was illegal to meet its burden under Rule 801(d).

Specifically, the district court concluded that the government needed to show that the participants in this scheme *willfully* violated the AKS. And the district court believed willfulness required knowledge of illegality. Because the district court found that the government did not prove knowledge of illegality, and thus willfulness, to its satisfaction at the paper hearing, the district court reasoned that the government had not proven the existence of an

illegal AKS conspiracy. And without an *illegal* conspiracy, the district court held that it could not admit coconspirator statements under the coconspirator exclusion from the hearsay rule.

The government appealed the district court's decision. In their briefing, all parties assumed implicitly that the government had to prove the charged AKS conspiracy to admit the statements, with the government insisting that it could prove the defendants' guilt and the defendants maintaining that it could not. But in a letter to the parties, we raised a question left unaddressed by them: Does a conspiracy need to be unlawful to introduce coconspirator statements under the Federal Rules of Evidence? In other words, was the district court wrong to conclude that the government needed to prove, before trial, all the elements of an illegal AKS conspiracy to have the coconspirator statements admitted? The parties addressed this question at oral argument and in letters to the court under Federal Rule of Appellate Procedure 28(j). We answer it now.

## II.

Under 18 U.S.C. § 3731, the United States can appeal a district court's decision to exclude evidence in a criminal proceeding. Here, the government appeals after the district court excluded statements from the defendants' alleged coconspirators. We review a district court's evidentiary rulings, including those concerning the admissibility of coconspirator statements, for an abuse of discretion. *United States v. Magluta*, 418 F.3d 1166, 1177 (11th Cir. 2005). But a district court abuses its discretion *"per se"* when it bases

"an evidentiary ruling on an erroneous view of the law." *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1345 (11th Cir. 2004) (citing *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1232 (11th Cir. 2004)). In essence, "[a] district court's interpretation of the Federal Rules of Evidence receives *de novo* review." *United States v. Ahmed*, 73 F.4th 1363, 1380 (11th Cir. 2023) (citing *Doe No. 1 v. United States*, 749 F.3d 999, 1003 (11th Cir. 2014)).

### III.

This appeal turns on the hearsay rule. "[A] statement, other than one made by a declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted" is hearsay. *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) (citing Fed. R. Evid. 801(c)). Generally, hearsay is not admissible. Fed. R. Evid. 802. Excluded from the definition of hearsay, though, are out-of-court statements offered against an opposing party that the opposing party made. *See* Fed. R. Evid. 801(d)(2). That hearsay exclusion also covers statements made by an opposing party's surrogate, including: (A) statements "made by the party in an individual or representative capacity," (B) statements "the party manifested that it adopted or believed to be true," (C) statements made by someone "whom the party authorized to make a statement on the subject," (D) statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed," and (E) statements "made by the party's coconspirator during and in furtherance of the conspiracy." *Id*.

The last of these—the coconspirator exclusion—is at issue here. To understand the scope of this exception, we look to the plain language of Rule 801(d)(2)(E). *See Travelers Prop. Co. of Am. v. Ocean Reef Charters LLC*, 71 F.4th 894, 907 n.9 (11th Cir. 2023). The word "conspiracy" as used in the rule can refer to either (1) an agreement to do something unlawful or (2) the act of working together toward a shared goal (i.e., a joint venture). *See, e.g., Conspire, Webster's New World Dictionary* (2d ed. 1972) ("1. To plan and act together secretly, esp. in order to commit a crime 2. To combine or work together for any purpose or effect"). The defendants argue that the first definition applies, and the government argues that the second governs. We agree with the government. The Supreme Court's precedent and our own both suggest that the word "conspiracy" in Rule 801(d)(2)(E) means an arrangement to work together toward a shared goal. That definition is also supported by our sister circuits, leading treatises, and the text of the rule.

*A.*

We will begin with the relevant precedents of this Court and others. We first identify precedents that instruct that the coconspirator exclusion does not depend on the lawfulness of the conspiracy at issue. We will then turn to the authorities cited by the defendants.

1.

Before the Federal Rules of Evidence were even adopted, the Supreme Court held that the common-law coconspirator

exclusion from the common-law hearsay rule did not require proof of unlawfulness. Over a century ago, a coal company sued officers of a union for working with its employees to unionize its mine in restraint of trade. *Hitchman Coal & Coke Co. v. Mitchell*, 202 F. 512, 533–46 (N.D. W. Va. 1912), *rev'd*, 214 F. 685 (4th Cir. 1914), *rev'd*, 245 U.S. 229 (1917). The district court, relying on statements from the officers' coconspirators, found for the coal company. *Id.* at 555–57. The Fourth Circuit reversed, in part because the company did not establish that those who made the statements had entered the conspiracy for an unlawful purpose. *Mitchell v. Hitchman Coal & Coke Co.*, 214 F. 685, 708 (4th Cir. 1914).

The Supreme Court reversed the Fourth Circuit, directly addressing an objection that the district court relied on inadmissible evidence in finding for the coal company. *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 249 (1917). The Supreme Court explained that, for coconspirator statements to become admissible, "it is not necessary to show by independent evidence that the [conspiracy] was criminal or otherwise unlawful." *Id.* Why? The Supreme Court explained that the coconspirator exclusion is rooted in agency law and can apply to lawful ventures:

> The rule of evidence is commonly applied in criminal cases, but is of general operation; indeed, it originated in the law of partnership. It depends upon the principle that when any number of persons associate themselves together in the prosecution of a common plan or enterprise, *lawful* or *unlawful*, from the very act of association there arises a kind of partnership,

> each member being constituted the agent of all, so that the act or declaration of one, in furtherance of the common object, is the act of all, and is admissible as primary and original evidence against them.

*Id.* (emphasis added).

Although we are not bound by *Hitchman Coal*'s analysis of the common law rule in interpreting the modern Rules of Evidence, there is also no indication that the codification of Rule 801(d)(2) disturbed it. When the Federal Rules of Evidence were enacted in the 1970s, "the co-conspirator exception to the hearsay rule [wa]s steeped in our jurisprudence." *Bourjaily v. United States*, 483 U.S. 171, 183 (1987). Courts often find common law decisions helpful in interpreting the modern Rules of Evidence. *See, e.g.*, *Tome v. United States*, 513 U.S. 150, 160 (1995). And the legislators who enacted the Federal Rules wrote that, even though Rule 801(d)(2) "refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule even though no conspiracy has been charged." S. Rep. No. 93-1277, 93d Cong., 2d Sess. 24 (1974) *as reprinted in* 1974 U.S.C.C.A.N. 7051, 7073.

In any event, shortly after the Rules were enacted, our predecessor court held that the admissibility of evidence under Rule 801(d)(2) does not turn on proof of an *unlawful* conspiracy. In *United States v. Postal*, 589 F.2d 862 (5th Cir. 1979), the United States caught three men aboard a sailboat several miles south of the

Florida Keys and charged them with conspiracy to possess marijuana with intent to distribute. *Id.* at 865–68. The district court conducted a bench trial and found the defendants guilty, relying in part on the sailboat's logbook to understand the boat's movements. *Id.* at 865, 886. As one of several arguments to reverse, the defendants objected to the admission of the logbook on the grounds that it was hearsay. *Id.* at 886 n.41. Our predecessor court rejected that argument under Federal Rule of Evidence 801(d). It held that, for purposes of the coconspirator exclusion, "the agreement need not be criminal in nature." *Id.* Instead, because "the voyage was a 'joint venture' in and of itself apart from the illegality of its purpose[,] . . . the logbook was therefore admissible as nonhearsay under the rule." *Id.*

We note that at least eight of our sister circuits agree with the *Postal* court's reading of the coconspirator exclusion.[2] This list

---

[2] *See United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002) (stating that "[t]he objective . . . need not be criminal at all"); *In re Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d 238, 262 (3d Cir. 1983) (explaining that it would be an error to require "a showing not only that there was a combination between the defendants, but also that the combination was unlawful"), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *United States v. El-Mezain*, 664 F.3d 467, 502 (5th Cir. 2011) (holding that "a statement may be admissible under Rule 801(d)(2)(E) if it is made in furtherance of a lawful joint undertaking"), *as revised* (Dec. 27, 2011); *United States v. Musaibli*, 42 F.4th 603, 615 (6th Cir. 2022) (explaining that "[w]hen determining whether a conspiracy existed under Rule 801(d)(2)(E), the key is coordinated action" (cleaned up)); *United States v. Kendall*, 665 F.2d 126, 130 (7th Cir. 1981) (explaining that "'conspiracy' as an evidentiary concept . . . and 'conspiracy' as a concept of substantive criminal law are not coterminous" and referring to

22-14219               Opinion of the Court                        11

includes the Fifth Circuit, which also agrees that our shared precedent in *Postal* resolved this issue. *See United States v. El-Mezain*, 664 F.3d 467, 502 (5th Cir. 2011), *as revised* (Dec. 27, 2011). Leading treatises agree with this position too. *See* 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6778 (2023 ed.) ("Rule 801(d)(2)(E) uses the familiar term 'conspiracy,' but it . . . addresses teamwork more generally."); 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:59 (4th ed. 2013) (Aug. 2023 Update) ("The [exclusion] can apply even if the proponent does not show that the venture is unlawful, and the absence of an element that may be important from a substantive perspective does not block use of the [exclusion]." (citations omitted)).

2.

For their part, the defendants argue that the coconspirator exclusion requires that a conspiracy be unlawful. That proposition, the defendants say, is supported by several authorities. We disagree. None of the authorities they offer purport to overrule or limit

---

the former as "a 'joint venture' exception . . . or a 'concert of action' exception" (citations omitted)); *United States v. Layton*, 855 F.2d 1388, 1399 (9th Cir. 1988) (noting that "the goal or objective of the common enterprise would appear to be irrelevant"), *overruled on other grounds by United States v. George*, 960 F.2d 97 (9th Cir. 1992), *as recognized by Guam v. Ignacio*, 10 F.3d 608 (9th Cir. 1993); *United States v. Kaatz*, 705 F.2d 1237, 1244 (10th Cir. 1983) (holding that a district court did not err in admitting coconspirator statements because it "correctly" determined that "the defendants were engaged in a joint venture"); *United States v. Weisz*, 718 F.2d 413, 433 (D.C. Cir. 1983) (holding that "Rule 801(d)(2)(E) . . . is not intended to limit applicability of the doctrine to unlawful combinations").

the precedents discussed above. None of them adopt the defendants' reading of the hearsay rule. Indeed, they don't even address the issue at all.

The defendants' first group of cases are about the evidentiary standards that apply to proving a conspiracy under Rule 801(d)(2)(E); but they do not suggest, much less hold, that *Hitchman Coal* and *Postal* are bad law. *See Bourjaily*, 483 U.S. at 175; *United States v. Tombrello*, 666 F.2d 485, 490 (11th Cir. 1982); *United States v. Grassi*, 616 F.2d 1295, 1301 (5th Cir. 1980); *United States v. Perry*, 624 F.2d 29, 31 (5th Cir. 1980). In *Bourjaily*, the Supreme Court held that there must be evidence of a conspiracy before a court can admit coconspirator statements. 483 U.S. at 175. But it did not hold that, before admitting those statements, a court must find that the conspiracy was unlawful. Indeed, it recognized that "the evidentiary standard is unrelated to the burden of proof on the substantive issues." *Id*. Similarly, in *Tombrello*, we held that a court cannot admit statements made by a coconspirator before or after the relevant conspiracy. 666 F.2d at 490. But we never said that the conspiracy must be unlawful. True, in justifying the coconspirator exclusion, we said that conspirators are "partners in crime." *Id*. But we used that phrase in its idiomatic sense, referring to individuals working closely together, and further justified the coconspirator exclusion by likening it to an agency relationship. *See id*. Likewise, in both *Grassi* and *Perry*, our predecessor court held that mere presence or association does not count as participation in a conspiracy for the coconspirator exclusion. *Grassi*, 616 F.2d at 1300–01; *Perry*, 624 F.2d at 31. Yet in neither case did our predecessor court hold

22-14219               Opinion of the Court                    13

that the exclusion requires the relevant conspiracy under Rule 801(d)(2)(E) to be unlawful.

In the second group of cases, we affirmed district courts for admitting coconspirator statements. *See United States v. Hough*, 803 F.3d 1181, 1193 (11th Cir. 2015); *United States v. Hartley*, 678 F.2d 961, 972 (11th Cir. 1982), *abrogated by United States v. Goldin Indus., Inc.*, 219 F.3d 1268 (11th Cir. 2000). We noted that the district court had found facts supporting the existence of a criminal conspiracy. *Hough*, 803 F.3d at 1193; *Hartley*, 678 F.2d at 972. But our reasoning does not suggest that the district court couldn't have admitted the statements if only a joint venture had been proven. To draw that conclusion would be "to commit the fallacy of the inverse (otherwise known as denying the antecedent): the incorrect assumption that if P implies Q, then not-P implies not-Q." *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 589 (2014) (Scalia, J., concurring in the judgment). Sometimes, the very nature of a Rule 801 conspiracy will make the fact of that conspiracy unlawful—an agreement to commit murder, for example. But it need not always be so, as in *Postal* when the defendants jointly sailed a boat.

Alongside the above precedents, the defendants offer a constitutional argument. They say that our view of the coconspirator exclusion undermines the right of criminal defendants to confront the witnesses against them as guaranteed by the Sixth Amendment's Confrontation Clause. But "the Confrontation Clause" is concerned with "the *testimonial* statements of a witness." *United States v. Caraballo*, 595 F.3d 1214, 1227 (11th Cir. 2010). And

| | | |
|---|---|---|
| 14 | Opinion of the Court | 22-14219 |

"statements in furtherance of a conspiracy" are "by their nature []ated not testimonial." *Crawford v. Washington*, 541 U.S. 36, 56 (2004).

### B.

We believe the weight of authority from our court and others resolves this issue. But we will briefly explain why the surrounding text of the rule does not require a district court to inquire into whether the statements were made during illegal activity.

Rule 801(d)(2), which contains the coconspirator exclusion, has nothing to do with illegality. It excludes opposing party statements from the hearsay rule. *See* Fed. R. Evid. 801(d)(2) (carrying the heading "An Opposing Party's Statement"). In addition to statements that were literally made by one's opposing party, the rule also excludes statements that are attributable to an opposing party based on agency principles. *See, e.g.*, *Hitchman Coal*, 245 U.S. at 249. For example, the statements of an opposing party's agents and employees are treated the same way as the statements of that opposing party and thus are also not hearsay. Fed. R. Evid. 801(d)(2)(C)–(D). Similarly, the rule excludes from the definition of hearsay third party statements that are adopted or ratified by the opposing party. Fed. R. Evid. 801(d)(2)(B). None of those other exclusions require a district court to assess whether an out-of-court statement was made for an illicit purpose.

And there is no basis in the text to read such a requirement into *only* the coconspirator exclusion. The exclusion exists in both civil and criminal proceedings, just like the other hearsay exclusions about opposing party admissions. *See* Fed. R. Evid. 1101(b).

22-14219               Opinion of the Court                    15

And when the Rules of Evidence apply differently to allegations of criminal activity, they expressly say so. *See, e.g.*, Fed. R. Evid. 404(a)(2). Instead, it is much more reasonable to think that the coconspirator hearsay exclusion operates similarly to its sister exclusions concerning opposing party admissions: they all treat statements by some third party acting on behalf of the opposing party as analogous to admissions by the opposing party. *See* Wright & Miller, *supra*, § 6778 ("Support [for the joint venture reading of the coconspirator exclusion] comes from the other iterations of Rule 801(d)(2) that reach out to admit statements of non-party declarants engaged in benign arrangements with the party.").

The defendants say that our decision in *United States v. James*, established a new type of preliminary proceeding to assess whether the opposing party and the out-of-court declarant committed a crime together. But they are misreading *James*. In *James*, we held that a district court should assess the admissibility of out-of-court statements before admitting them. Specifically, "we h[e]ld that Rule 104(a) requires that the judge alone make the determination of the admissibility of the evidence" because "[t]he jury is to play no role in determining the admissibly of the statements." *James*, 590 F.2d at 579–80. But nothing in *James* contemplates a pretrial hearing to assess whether an out-of-court declarant or a party is guilty of a crime.

## C.

As a last-ditch effort, the defendants argue that the government forfeited the argument that the district court incorrectly

applied Rule 801(d)(2)(E). They argue that the government accepted that it *had* to prove the defendants' guilt to admit the statements by arguing that it could. And, the argument goes, it would be "unfair" to "[a]llow[] the government to whipsaw a defendant" by admitting evidence based on a previously forfeited argument. *United States v. Ross*, 963 F.3d 1056, 1066 (11th Cir. 2020) (en banc). So the defendants argue that we should affirm despite the district court's error. We disagree.

For starters, the government raised this issue in the district court. There, the government expressly disputed the idea that it must prove the elements of a criminal conspiracy to admit this evidence. It told the district court that the Rules of Evidence do not countenance the "wholesale exclusion of all co-conspirator statements on the ground that no crime occurred." It also argued that *James* does not allow a district court "to weigh the pretrial evidence and rule that no crime occurred" or require a "pretrial determination of the sufficiency of the evidence" on the conspiracy count in the indictment.

Although the government appealed the district court's decision to exclude this evidence, it did not raise these specific arguments about the meaning of Rule 802 until we prompted it. But no party—not even the government—can stipulate to the law that governs its case through its litigation conduct. We have held that "parties cannot waive [or forfeit] the application of the correct law or stipulate to an incorrect legal test." *United States v. Dawson*, 64 F.4th 1227, 1239 (11th Cir. 2023) (cleaned up). That's why we have

22-14219               Opinion of the Court                    17

explained that a party cannot "waive or forfeit the existence of a precedent or the words of a statute." *ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*, No. 22-10811, __F.4th__, slip op. at 6 (11th Cir. Aug. 29, 2024). Instead, "[w]hen an issue or claim is properly before" us, we "retain[] the independent power to identify and apply the proper construction of governing law" and are "not limited to the particular legal theories advanced by the parties." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *see also United States v. Undetermined Quantities of All Articles of Finished and In-Process Foods*, 936 F.3d 1341, 1350 (11th Cir. 2019).

The government argued below and on appeal that its evidence is admissible under Rule 801(d)(2)(E). We cannot adjudicate the government's argument without addressing what a proponent of evidence must establish to admit evidence under Rule 801(d)(2)(E). And we cannot apply an erroneous interpretation of that rule even if the parties didn't identify the correct one.

★ ★ ★

For these reasons, the defendants are wrong that the district court should be affirmed. Instead, it must be reversed. It committed an abuse of discretion by misapplying the standard for admissibility under Rule 801(d)(2)(E). The relevant question the district court should have asked is whether the out-of-court statements are offered against an opposing party and were made during and in furtherance of a joint venture with that party. On remand, the district court should apply that standard to the statements at issue to determine their admissibility under Rule 801(d)(2)(E).

## IV.

The district court is **REVERSED**. The matter is **REMANDED** for further proceedings consistent with this opinion.